The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning all. Before we begin our proceedings with our case, I just want to just exercise a little personal privilege. This is the last time I will be working with Jennifer Bayless, who is our courtroom deputy today, as she is leaving for greener pastures later on this month. And I just wanted to tell her how much we've appreciated all of her efforts on behalf of the court and all of her good work these many years. So thank you, and we wish you the best of luck and success, Jen. Thank you. Okay. We'll call our first case, which is 20-1411, Rao v. Smith. Mr. Doshi, whenever you're ready. Thank you, Your Honor. Good morning. May it please the Court. The Board's decision in the interference below is not supported by substantial evidence. The Rao-involved application explicitly describes the claimed step of contacting 1243-ZF with chlorine in the presence of the claimed catalyst to produce 1233-XF by way of 243-DB throughout the specification and, in particular, columns 7 and 8, as well as the examples. Mr. Doshi, this is Jennifer.  Yes, Your Honor. Just a little bit of a housekeeping matter before we get into some of the details. My understanding, at least what you say in gray, is that you're arguing that this is not an inherency case. That is correct. And that you say that you never made an inherent description argument before the Board. So are we to conclude that if we do not find an express disclosure, you've kind of forfeited your ability to argue inherency or dislodged the necessity for us to reach inherency if we don't find an express disclosure? If there is no express – if the court finds that there is no express disclosure, then we look to Dr. Thrasher's testimony. And Dr. Thrasher says that under the Gibbs free energy and the scientific literature and the science behind his opinion, that the pathway from 1243ZF to 1233XF by way of 243DB is going to happen. And so it necessarily will happen, and it is inherent. Now, did the parties specifically address inherency at the Board level? I don't believe – I believe the answer is no, but if we look at Dr. Thrasher's testimony, and in particular his declaration – Well, I understand what you're saying, but that's why I'm confused, because the Board also – you say the Board didn't reach inherency, but it did, didn't it, when it looked at whether or not 23DB was necessarily present? That's the inherency test, right? Again, I'm not – this isn't a gotcha. I just want to understand the parameters of what questions are before the court today. Right. And the Board found it wasn't necessarily present. That's an inherency test, right? It did use those words, but the necessarily present is really – the test really should be discernible, right, discernible or recognizable to a person of ordinary skill in the art. And we've demonstrated – I'm sorry, Ralph has demonstrated through Dr. Thrasher, and again, he looked at the science behind it. He looked at the scientific literature. He also relied on prior art to show that it's going to happen, that the reverse of the CLF, the reverse pathway, is going to take place, and therefore 243DB is going to form. And even if there is some CLF that is formed, it's going to spontaneously dissociate and create the pathway to 243DB to 1233XF. I'm not – this is Jeff. I'm not understanding your answer to Chief Judge Prost's questions. I mean, is this – are we saying that the label doesn't matter, and whether you call it inherency or disclosure or whatever, it's the same test, or are you arguing for a different test? Are you saying that the probability that DB243 is formed is sufficient? Yes, that is correct. The formation of 243DB is going to happen. Well, it's going to happen for sure. It seems as though it's likely to happen, but not for sure that it's going to happen. Isn't that a fair summary of the expert testimony for both sides here? Well, Dr. Thrasher said that it's highly likely to happen. That is correct. But it's disfavored. You know, in terms of the Gibbs free energy, it's highly disfavored that it's going to go the other way. In fact, he shows that even at the higher temperatures of examples 3, 5, and 6, it's going to go through 243DB to reach the 1233XF. There's nothing in Dr. Sanford's, which is Smith's expert, in his testimony that shows that 243DB is not going to be formed. So, I don't know if that answers the question. Judge Kleven, you're asking, is the expert saying it won't happen regardless of the catalyst you use? Is Dr. Thrasher saying it doesn't make any difference what catalyst you use because the claim requires a specific catalyst? Right. So, to back up a little bit, the reaction of 1243XF to 243DB has been known for quite some time. And Dr. Thrasher is saying that the Gibbs free energy is so high that it's going to spontaneously occur. That the CLF, if any CLF is formed, it's spontaneously going to disassociate into HCL and, I'm sorry, HF and CO2. In every possible catalyst under the sun, it will likely happen? You see, my point is, isn't there a specific requirement in the claim for a specific catalyst? There are. And these were well-known chlorofluorination catalysts that were disclosed by one of the co-inventors of the RAU application in the 559 patent. Well, there's a shopping list of catalysts in the spec, but, I mean, the argument is that it's not sufficient blazemarks. The expert wouldn't know which catalyst would always work. But these are known chlorofluorination catalysts that were known to work in not only the 559 patent, but also the 491 patent that we cited, the 634 patent. So, these are specific catalysts that were known to be chlorofluorination catalysts that would move the reaction from 1243ZF to 243DB to 1233XF. I also want to note that 1243ZF... Isn't it the case that your specification discloses a specific catalyst that's within the scope of the claims? It does. The specification talks about the chlorofluorination catalysts at columns 7, lines 18 through 29, and they include carbon, alumina, and metal oxides. And the examples then use the chromium oxide, which is one of the three that are claimed in examples 3, 5, and 6. And what we see in examples 3, 5, and 6 as compared with examples 1 and 2 is that 243DB has been consumed to move to 1233XF. Whereas in examples 1 and 2, without the catalyst, you see the formation of 243DB. You also see a little bit of formation of XF. But with the added catalyst, you can see that the reaction pathway moves forward from 243DB to 1233XF. And that's what... You're confusing two separate issues here. One is whether, from a written description standpoint, your specification discloses one of the catalysts that's included in the claim. And the answer to that is, yes, it does. There isn't any issue about that, correct? I'm sorry. Could you repeat the question? We have two separate issues here, it seems to me. One is whether the reaction using the catalyst produces 243DB. We've been discussing that. There's a separate question as to whether your specification discloses one of the catalysts disclosed or claimed in the claim. And the answer to the latter question is that your specification specifically describes using one of the transition metal catalysts disclosed in the claim, right? That is correct. That is correct. But the focus on one example shouldn't preclude the applicant from claiming those that are already disclosed throughout the specification. And in particular, column 7, lines 18 through 29. And in particular, this case, because these were no... Are you suggesting that your specification has to disclose all of the catalysts in the claim? Or is it sufficient for written description to disclose one of them? So the examples use one of the disclosed catalysts. The count includes three catalysts. And the specification discloses those three catalysts. I guess... I don't know if I'm asking the same thing Judge Dyke is asking in a different way, but let me try it. Only one of the listed catalysts is used in the example. And your expert testified that selecting catalysts would be predictable. But even if that's so, that doesn't mean that the application describes these enumerated catalysts being used for this step. So even if we found that 243dB is necessarily produced, why couldn't we affirm on the fact that there is insufficient description of the claimed catalyst? Good question. Okay. So if we look at column 7, and I'm in my rebuttal time, and I... Yes, but you can feel free to answer. So if we look at column 7, and we look at lines 18 through 29, it says, Preferably, the catalyst is used in the reaction zone for the vapor phase reaction of HF and Cl2 with starting materials. So the specification earlier in columns 2 and columns 4 talked about 1243zF being the starting material. And 1243zF is the preferred starting material. And so what column 7 is saying is you can use the chlorofluorination catalyst with 1243zF, and you can form 243dB, which is in column 8. And then you can recycle that to push the reaction forward to 1233xF and other downstream compounds. And what a person of ordinary skill in the art would see is an example that shows exactly what columns 7 and 8 are talking about. And that is, you add a catalyst to 1243zF, and in this particular case, it's chromium oxide, and that will push the reaction forward from 1243zF to 243dB to 1233xF. So there is written description for 1243zF in the presence of chlorofluorination catalyst. That includes carbon and aluminum. And with that, I think I'll reserve the rest of my time unless there's further questions. I think not. Let's hear from Mr. Silber, please. Good morning, Your Honors. May it please the Court, Blair Silber on behalf of APOE. The Board's decision in this case is correct because substantial evidence supports three key findings of fact. The first two are that Rouse's application does not explicitly or necessarily describe producing 243dB from 1243zF in the presence of any catalyst whatsoever. And the second, as Judge Prost just noticed, is that Rouse's application doesn't describe producing 243dB from 1243zF in the presence of the three claimed catalysts in the count. Now, the Hyatt v. Boone case is very clear that when you're talking about written description for an interference count, what you need is all of the limitations in the interference count or, and this is a quote, the applicant must show that any absent text is necessarily comprehended in the description provided. Boiled down, express disclosure, or inherent disclosure for any absent text. Now, I just heard my opposing counsel argue for a new standard for written description that they were looking for whether the written description is discernible from the text that is not in the briefing, and so that argument has been waived. But the law is clear at this point. Written description must be expressed or necessarily present. In Rouse's application, under the first finding of fact, the application does not describe as preparing 243dB from 1243zF in the presence of any catalyst whatsoever. Instead, what we have is an application describing potentially preparing dozens of products besides 243dB and potentially listing dozens of potential chlorofluorination catalysts. But tying those two together for the production of 243dB is never done. Instead, we have two embodiments in columns 5 and 6 on appendix page 228 where there's an inert packing material, there's pre-contact with chlorine, but there is no catalyst used. Then we get to the examples, examples 1 and 2. No catalyst used, but 243dB produced. But what happened when they added a catalyst? Examples 3, 5, and 6, 0% 243dB detected. That is the sum total of the disclosure in Rouse's specification. And there's no dispute that that's what the disclosure actually says. And that interpretation is supported by expert testimony from Dr. Sanford that was relied on by the board and so therefore is supported by substantial evidence. Now, as Judge Post also noted, Rouse has unequivocally abandoned any reliance on inherency. So while we did hear Rouse Council just argue that its expert testimony could be used to support a necessity finding, that argument has been unequivocally waived in the reply. And you can look at pages 3, 8, 9, 22, 23 of the reply where they repeatedly say we are not arguing inherency. But this is important because below, before the board, they did not argue express disclosure either. And I would like to refer the panel to appendix page 12 of the final written decision where the board said in characterizing Rouse's argument, Rouse opposes Smith Motion 2 arguing essentially that while its specification does not expressly provide a separate process step of producing 243dB by contacting R1243CF with Corine in the presence of the specifically claimed catalyst, one of skill in the art would have understood, and it goes on from there. But again, does not expressly provide a separate process step. And so now for the first time in this appeal, they are arguing only express disclosure, but as I just explained, the patent doesn't actually provide that detail. Now why did they walk away from inherency? They walked away from inherency because it's indisputed in this case that under the count, there are two routes between 1243CF and 1233XF. One goes through 243dB. One does not. There are some other permutations. But what that means as a matter of law is that you cannot have necessity to show inherency. And there's no dispute about that. On what facts do the two alternative routes depend? In other words, apparently the testimony from both experts is that it's likely that 243dB would be formed as an intermediate, but that it's possible that there was another route to the formation of the end product. What does the record disclose as to what determinants there are as to whether one route rather than the other would be followed? Does it depend on temperature, for example? So, Your Honor, which route is actually followed is unknown in this case, and that is why the inherency case failed. We don't know. Now there are a lot of things that can affect which route would be followed. The conditions, the temperature, those do affect which one would be more favored or not. But in this case, we have expert testimony that routes were both possible, and you can see the flowchart in our brief. It's on appendix page 2461. It's supported by Dr. Sanford's declaration testimony. There's no dispute that the routes exist and are possible. And as we know from the Agilent case that we cited in our brief, you cannot establish inherency through probabilities and possibilities. And so now when they're pointing to Dr. Thrasher's testimony about these Gibbs free energy equations, whether things were thermodynamically favored or not, we are no longer looking at inherency because they've waived that. But even if you did look at it, the conclusion is not the certainty that Rouse counsel offered this court. The conclusion from Dr. Thrasher is likelihood. And, again, as I just said, likelihood doesn't get you to necessities because you're only talking probabilities, not necessarily what occurred. Now there's a good reason why the board, or why Rouse, then turned to the prior art to try to fill the gap in its express disclosure, because it doesn't have inherency and it doesn't have the text. And because the text is absent, they have to turn to something else. But you can't fill gaps in your written description with prior art. That confuses inherency with written description. And there's a good reason why you couldn't do that, and that's because if you allowed applicants to claim subject matter that is merely obvious by citing prior art, you would never – it would swallow the rule for inherency. You would never have a need to show necessity for absent text, which contradicts the disclosure in Hyatt v. Boone. So as the board recognized, the reliance on the prior art in this case was the wrong question. But this case is easier than that, and it's easier because when you look at the prior art cited by Rouse, none of it actually supplies the missing text. None of it ties. When you say the prior art, are you talking about the 559 patent, for example? Yes. For example, let's talk about the 559 patent. The 559 patent is cited in the opening brief, the footnote on page, I believe, 23. And in there they claim that the 559 patent, it was known to produce 243dB by chlorofluoridating 1243ZF. Now in the reply brief on page 18, they've expanded on this argument. They started citing the table on those two pages for saying this also shows production, catalytic production of 243dB. But that argument wasn't in the opening brief, and so I argue that that's waste. But even if you look at the merits of the 559 patent as an example, that has a different starting material. That table discloses 250FB, not 1243ZF as the starting material. So when you chlorinate, when you chlorofluorinate 250FB, the 559 patent most says you might get some 243dB and some 1243ZF, but it doesn't say how you get there. It doesn't say the route, and it doesn't even use the same catalyst that is in the RAL specification at issue in interference, the chromium cobalt catalyst. It uses just a chromium oxide catalyst. And so what we have here is art that's off point, and we know that when you look at off point art, that is also insufficient to fill gaps in written description. And we cited that FWP IP case and the Board of Trustees of Leland Stanford University case. Both of which say if you're talking about a different platform, if you're talking about prior art involving that doesn't actually show the missing limitation in that circumstance, it's still fatal to your case, even if considered. Now I want to turn back to the third finding, in fact, I mentioned that's supported by substantial evidence, which as the question this morning noted, is an independent basis for affirming this appeal. RAL's application doesn't actually describe preparing 243dB and 1243ZF in the presence of all three claimed catalysts. And we know that written description requires that you provide support for the full scope of the claims. So one of the three claimed catalysts is not enough. You need not just the oxide of a transition metal, but alumina and activated carbon in your specification. And as the Board recognized, merely providing a laundry list, or as Judge Clevenger said, a shopping list of catalysts, alongside general directions does not provide those blaze marks, those guides under Ruchig and Ariad that you need for written description. But this is particularly important here because catalysts are notoriously unpredictable. And the unpredictability of the catalyst went mostly unrebutted throughout the proceeding. When you have unpredictability, the Synthase case that we cited in our brief, the Ariad case that we cited in our brief, all of them say you need more disclosure. And what do we have here? We have dozens of potential products, dozens of potential catalysts, but because they're not predictable, and this is supported by the testimony of Dr. Sanford, because they affect different pathways, also supported by the testimony of Dr. Sanford and that Dr. Thrasher agreed with, you require extensive testing to figure out which catalyst works on which reaction route. So when you have two potential reaction routes, and I think, Judge, this gets back to your question, when you have two potential reaction routes and you have a bunch of catalysts and you think there's some catalytic reaction going on, the question is then raised, which route is being catalyzed? And we don't know that because their specification doesn't tell us. And that's why the board was correct to not find inherency as well, in addition to the laundry list not supporting the written description of the other two elements of the claim. Now I want to talk really briefly about the Gibbs free energy equations that we heard so much about this morning. Those are not so emphatically clear to show what absolutely must occur in this situation. They deal with likelihood, as I mentioned before. But also they didn't, as Dr. Sanford explained, these are different conditions. The Gibbs free energy equations used standard conditions, low temperatures, did not account for the presence of a catalyst whatsoever, and as Dr. Sanford explained, they become inaccurate when you're talking high temperatures, when you're talking free radical processes, where suddenly they break down and kinetic measurements would be better than thermodynamic. And so the board had all this in front of it and it decided, as a matter of fact, against Rao in this circumstance. Now with regard to the acceleration argument, Rao argued that by looking at the table, one would have known that zero does not mean zero. In fact, it means that the consumption of 243 GB was accelerated. But what did they cite for that besides that Gibbs free energy equation that I just talked about? They only cited the definition of the word catalyst. And this gets me back to the point I said before. Catalyst of what? You can't look at a dictionary definition of what a catalyst is without confirming that the catalyst works for the specific reaction. And again, that's the gap in the specification. That is what's missing from their disclosure. Okay. Anything further? Yes, Your Honor. No, I just wondered if you were going to complete it. Yes, Your Honor. I'd just like to close again. Every expert, every party agreed in every paper that Rao's application does not explicitly state that 243 GB is produced using a claimed catalyst. And the board recognized below that Rao was not arguing for express disclosure. And now we're hearing all about express disclosure. But they've also walked away from inherency very clearly in the reply brief. But now it will argue we're hearing there's inherency. And so there are significant issues of waiver in this case. But because substantial evidence supports all those three key findings of fact that I mentioned before, the board's decision in this case should be affirmed. And if there are no further questions, I conclude my remarks. Thank you. Mr. Doshi, you have seven minutes remaining. Thank you, Your Honor. Mr. Doshi, I just have one question. I'm quite willing to confess that I am confused about whether inherency is in this case or not in this case. Because your brief says you're not talking inherency, but yet at your oral argument, you said Dr. Thrasher provided the factual basis for an inherency claim. So I'm confused. Well, it's express disclosure. We did argue express disclosure. And that's in our briefs at 2560 to 2566, I believe. Yeah, that's right. 2560 to 2566. And what I'm saying to this court right now is all in the paper that was presented below. And we did talk about express disclosure. Now, to the extent express disclosure isn't found, we believe that there is sufficient evidence to show that it was inherent based on Dr. Thrasher's declaration. Now, Dr. Thrasher does talk about this Gibbs free energy at higher energy. Why did you say in your brief this was not an inherency case? Because that wasn't argued below. In terms of the parties did not address inherency specifically, we talked about the express. Again, we were relying on express disclosure. And we find that it is there. And, you know, counsel talks about columns five and six. That's a different embodiment. Columns five and six talk about liquid reactions, liquid phase reactions, whereas columns seven and eight, which I'm more focused on and is in the briefing below and in the briefing before this court, it talks about the catalytic conversion of the starting materials, which are defined as 1243ZF, and that's the preferred starting material, and the production of 243DB in column eight at line 39. And, again, recycling that 243DB to form downstream products. Now, I want to talk about a question or two. Go ahead. I'm still confused because I'm looking at appendix 12 in the board's decision where they're saying that you were arguing essentially that your specification doesn't provide an express disclosure. There is a basis for finding inherency. And they cite row opposition paper two, opposition two, paper 71. Do we have that in the record? You do, Your Honor. Where is it? And I see that paper 71. I'm looking for it, Your Honor. My appendix, unfortunately, has the numbers. To address your question, Your Honor, the express teaching is at 2560, which is our opposition motion to motion two, and 2561 and 2562. And we go through the disclosure that we're talking about here in column seven and eight where we're talking about the chlorofluorination of 1243ZF to form 243DB, which is then recycled to 243DB. I don't want to use up all your rebuttal. I think you're telling me that the board was just wrong at page 12 in its opinion when it was describing your position? The board says Rao opposes motion two, arguing essentially that while its specification does not expressly provide the steps, right? Right. One would have understood it's formed as an intermediate, ya de ya, which is consumed. That's the inherency argument, correct? The second part of that sentence. Correct. That's the board. The board was understanding you to make, to argue that there was not an express disclosure, but rather an inherent disclosure. So you must be telling me that you think the board just misunderstood you. That does not, right, that does not mean we didn't argue express disclosure. We did argue express disclosure, and that board found that we were relying on inherency. That's not exactly correct. It's basically the same argument, right? Because whether you call it inherency or express disclosure, your theory is under express disclosure that someone skilled in the art would have known that it was necessarily happening, which seems to be very similar to inherency. Well, there is express disclosure here, right, in our view, the 243 DB. Express disclosure because someone skilled in the art would understand it was necessarily present. That's your argument, right? Well, the argument is that claims, columns 7 and 8 together with the examples show that there is, that 243 DB is formed, and it's recycled. To form downstream products, including 245 CB. The specification doesn't say that expressly, so you're suggesting that it nonetheless can be an express disclosure because someone skilled in the art would understand it was necessarily happening, right? No, Your Honor. So columns 7 and 8 does expressly talk about contacting starting materials, 1243 ZF, with chlorofluorination catalysts. And then when we go to column 8, we see that 243 DB is formed. And then down at the bottom, 243 DB is then recycled. So there is express disclosure here. And we made that point down below, and the Board disregarded it. It dismissed it. At page 14, it said that we understand that RALF specification, I'm sorry, we've reviewed the portions of the RALF specification pointed to us, and then lists exactly what I just went through. Columns 7, 18 to 19, 835 to 39. Where are you on page 14? Where on page 14? Page 14, towards the bottom, it starts with, we have reviewed those portions of the RALF specification. And it talks about 718 to 19, 835 to 39, and 55 through 67, which is the contacting of the starting materials with chlorofluorination catalysts forming 243 DB and recycling 243 DB. It doesn't show the distinct step of forming 243 DB in the presence of the claimed catalyst. Columns 7 and 8 don't show the claimed catalyst, correct? Columns 7 shows the catalyst that can be used. These were well-known chlorofluorination catalysts. But when it talks about the recycling of the 243 DB in column 8, that's not talking about in the presence of a catalyst, right? It is. It is, Your Honor. That has to be read with column 7, chlorofluorination catalysts, which may be used in the vapor phase reaction. And this isn't talking about some other starting material. This is talking about starting materials that are defined by the specification that include 1243 ZF. And at 860, we see that it's recycled to go downstream and form 245 CB, 1234 YF, and some others. Okay, Mr. Doshi, we're way beyond your time, but since you've been peppered with important questions, let me allow you another minute or two. If you want to cover anything in rebuttal that you haven't had an opportunity to do yet, please proceed for another minute or two. I very much appreciate that, Your Honor. So I think one of the questions to counsel for Smith was, where are the facts that underlie Dr. Sanford's testimony? And we submit that there are none. I mean, Dr. Sanford testified that catalysts used in examples 3, 5, and 6 enabled the formation of 243 DB from 1243 ZF. He testified that the catalyst seems to be very active for the next transformation of 243 DB to most probably 1233 SF. That's at Appendix 2911. He further testified that the addition of a catalyst is not likely to poison the reaction so that no 243 DB would form at all. He also testified that he did not review any scientific literature showing that this alternative reaction would occur in place of the clean step. In other words, it's going to shunt or stop the production of 243 DB. And this stands in stark contrast with Dr. Thrasher's testimony, where he, again, shows actual scientific evidence that the alternative pathway will not occur because of Gibbs free energy. Now, counsel for Smith said that Dr. Thrasher didn't take into account the high temperatures, but I will point to Appendix 2725 where he says that his opinion does not change even at the higher temperatures. And so there's no meat to Dr. Sanford's testimony, and that in and of itself is not substantial evidence. He doesn't rely on anything. He's just expressing his opinion. In the abstract and in theory, could CLF be made? Yes, but under the conditions that are provided by the specifications, right, in Columns 6 and 7 and 8, it's not going to happen. And he's shown no evidence to the contrary that CLF will form, other than his own opinion that it could form. Did your expert testify that Columns 7 and 8 of the specifications show an express disclosure of the production of 243dB in the presence of a claimed catalyst? So Dr. Thrasher at paragraph 44, so let me flip to that. It is at 2676. Yes. Yes, he did. Yes, he did. At 2676 through 2686, and perhaps even more. Right, then he goes into the examples at 2687. That's the best site for where he says that 7 and 8 make that disclosure. Paragraph 44. Yes, paragraph 44, he starts with Columns 7. I'm sorry, 2676 to 2677. And there you see he's citing to Columns 7, lines 18 through 19. Then he goes on to cite Columns 7, lines 18 through 36. And then in subsequent pages, in particular 2680, he says Columns 8, lines 33 to 35, and 55 to 67. And then we go into the examples as further support for the disclosure and the specifications. So those are the slides. All right. I think we're going to end it here if my colleagues have nothing further.  We thank both sides.  That is it. Thank you, Your Honor.